EAST LINE & RED RIVER RAILWAY COMPANY v. THE STATE
OF TEXAS.

No. 2835.

1.   **Sale of Railway.**—The conveyance made by the East Line & Red River Railway Company to the Missouri, Kansas & Texas Railway Company, on November 28, 1881, of all its property and corporate franchises of every character whatever necessary to the conduct of the business for which it was created, except the mere franchise to be a corporation, until such time as by agreement of the parties this might be taken away by dissolution, was not authorized by law.

2.   **Same.**—To authorize such a sale, power to sell and the power of the purchaser to acquire title by the sale must both exist—following Railway v. Rushing, 69 Texas, 306.

3.   **Same—Consolidation of Railways.**—A charter power given to a railway corporation to join stocks or consolidate with any other railway company "running in the *same general direction*," only empowers such consolidation with a railway having a road which might constitute a part of the line between the points designated in the charter for the road which it was authorized to build.

4.   **Same.**—The charter power conferred on a railway company to rent, sell, lease, or consolidate with another railway company can not exist in the absence of some law authorizing it, and can not be implied from a prohibition extending only to parallel or competing lines.

5.   **Competing Lines of Railway.**—Railway companies, by reason of their relations with or control or management of other lines than their own, may become within

the meaning of the law *competing lines,* though the railways owned by them may not in fact connect.

6. **Sale of Railway.** — The East Line & Red River Railway Company had no power, by virtue of any law in force, or under its charter, to sell its road or any franchise conferred by its charter to the Missouri, Kansas & Texas Railway Company, and the latter had no power to buy.

7. **Evidence—Pleading.**—In a suit by quo warranto to forfeit the charter of a railway company which was chartered by the State before the adoption of the present Constitution, when the answer admits that the corporation is "subject to the Constitution and general laws now in force," it is unnecessary for the State to prove that the railway company had taken the benefit of legislation subsequent to the adoption of the Constitution, and thus became subject to all its provisions.

8. **Railways—Constitution Construed.**—The sale by the East Line & Red River Railway Company to the Missouri, Kansas & Texas Railway Company, made on the 28th November, 1881, the latter being a corporation chartered and organized under the laws of Kansas and Missouri, was in clear violation of section 6, article 10, of the Constitution of Texas.

9. **Forfeiting Franchise.**—While the courts of Texas have no power to forfeit the franchise of a railway company granted in another State whose line of railway has been extended into Texas, they can withdraw the franchise granted in Texas whenever a violation of the laws of Texas justify it, and can by injunction prohibit it from carrying on business in Texas in violation of Texas laws. They may also place the property of such corporation situate in Texas in the hands of a receiver, to adjust the claims of creditors.

10. **Waiver of Right of Forfeiture—Statute Construed.**—Nothing contained in the Act of March 28, 1885, evidences the intention of the Legislature to waive the forfeiture of the charter of a railway corporation, chartered by Texas, which has misused its franchise or failed to carry out the purposes for which it was created.

11. **Forfeiture of Franchise.**—When a railway company violates the Constitution of the State by making a transfer and sale of its property and franchises in a manner forbidden by that instrument, and afterwards willfully persists for a long period in a nonuser of its franchises, a cause for forfeiture of its franchises exists, and nothing contained in the statute indicates an intention of the State to waive its right to forfeiture under such circumstances.

12. **Same—Parties.**—In a proceeding on the part of the State to forfeit the charter of a railway company on account of a sale of its corporate franchises, rights, and privileges to a railway company chartered by another State, the purchasing company is not a necessary party.

13. **Receivers.**—Nothing contained in the Act of July 9, 1879; the Act of 1887, p. 120, section 3; the Act of 1885, p. 66, section 4; or Revised Statutes, article 606, relating to the appointment of receivers, is in violation of the rights of any person or corporation.

APPEAL from Travis.    Tried below before Hon. W. M. Key.
The opinion states the case.

*Baker, Botts & Baker,* and *Fisher & Townes,* for appellant. — 1.    Failure of a railroad corporation to keep its principal office in the State from which its charter is derived, and to hold annual meetings of its stockholders and directors within said State, are not common law grounds for forfeiture of charter.    All the cases holding such failure to be ground of

forfeiture are based on statutes of the States making the adjudication. The State v. Railway, 45 Wis., 579.

2. No constitutional provision nor statute of this State makes such failure ground for forfeiture. Section 3, article 10, of the Constitution makes it the duty of the Legislature to prescribe suitable penalties for such failure, but it nowhere undertakes to define what such penalties shall be. The Legislature, by Act of March 28, 1885, chapter 68, has determined what are suitable penalties, and forfeiture of charter is not among them. Const., art 10, sec. 3; Laws 1885, ch. 68, p. 67.

3. The Act of 1885, under which every case for violation of either section 5 or section 6 of article 10 of the Constitution must be brought, by providing, in substance, for a judgment of suspension from the exercise of corporate rights and functions by the guilty corporation until its reorganization in conformity with the Constitution, and clearly contemplating a subsequent resumption of such suspended rights and functions, is a clear expression of the legislative intent not to destroy the corporate entity for such violation; and such intent, so manifested, is binding upon the executive and judicial departments of the government, and upon each and every member of either. Const., art. 10, secs. 5, 6; Act July 9, 1879, Laws 1879, p. 43; Act March 28, 1885, Laws 1885, ch. 67, p. 65; The State v. Railway, 24 Texas, 130; The State v. Railway, 57 Texas, 534; The State v. Morris, 73 Texas, 435; Greenwood v. Freight Co., 13 U. S., 105; Bowen v. Robertson, 18 How., 485; Railway v. Elliot, 58 N. H., 451; The State v. Thresher Co., 41 N. W. Rep., 1020; The State v. People's Assn., 42 Ohio St., 580; The State v. O. B. & L. Assn., 35 Ohio St., 259; Ohio v. Bank, 10 Ohio St., 540; Commonwealth v. Railway, 12 Gray, 188; High on Ex. Rem., sec., 649; 3 Wood's Ry. Law, p. 1711; 2 Mora. on Corp., secs. 1028, 1029; Field on Corp., sec. 456; Ang. & Ames on Corp., sec. 776; Pierce on Rys., 12; 2 Redf. on Rys., 464; 1 Redf. on Rys., 674.

4. Connecting roads are roads whose lines touch each other. The proof showed conclusively that at the date of the sale the respondent's road extended from Jefferson to Greenville; that the Missouri, Kansas & Texas Company had constructed and was then operating a road from Denison to Mineola, touching respondent's road at Greenville. There is no evidence in the record as to the legal right, or want of legal right, on the part of the Missouri, Kansas & Texas Company to operate this line, further than such as is afforded by the presumption arising from its construction and actual operation. The burden of rebutting this presumption and showing the lack of authority was on the State.

5. Whether given lines of road are " competing," within the meaning of that term as used in our Constitution and in the charter of respondent, must be determined by the extent, location, and the relations of the two lines as constructed on the ground—that is, by their own physical conditions, and not by their business connection or opportunities for business

connection with other common carriers. If two road, as constructed on the ground, when judged exclusively by the extent of their respective lines and their location with reference to each other, are rival carriers, contending for the carriage of the same freight or passengers between the same markets, they are competing; if, however, these conditions do not exist they are not competing. If the two lines do not have more than one point in common they are not competing, though they may have one common point and may each form a link in one of two or more of different great routes of connecting lines extending between their one common point and the great commercial markets of the world.

6. The court erred in holding as a matter of law and of fact that the sale by the respondent to the Missouri, Kansas & Texas Company was not authorized by the respective charters of said companies, and by the position and relation of said roads to each other, and was therefore illegal.

7. The right of the respondent to consolidate with a foreign corporation was a valuable right conferred by its charter, which charter constituted and still constitutes an irrepealable contract, binding alike on the company and on the State, that can not be changed by either party to the prejudice of the other; and there being no allegation nor proof, express or implied, of any relinquishment or abandonment of this right by the respondent prior to or at the time of the sale, it was error in the court to consider this issue or find against respondent thereon.

8. The allegation in the State's bill and the admission in respondent's answer that it was, at the time of filing the said pleadings respectively, subject to the general and special laws and the Constitution of this State then in force, is neither allegation nor proof of its having been subject thereto on the 28th day of November, 1881, the date of making said sale.

9. It was not the intent of the framers of the Constitution of 1876, nor of the people in adopting the same, that its provisions, by their own force, should be operative against corporations then in existence; but such corporations were left to their rights as they had previously existed, unless they elected to accepted the benefit of subsequent legislation.

10. Legislation entitling railroad companies to sixteen sections of land to the mile was of full force and effect at the time of framing and adopting the Constitution of 1876, and the same legislation remained operative thereafter. These provisions were not "future legislation" within the meaning of section 8, article 10, of said Constitution; and the acceptance by the respondent of land certificates under said provisions was not the receipt of a benefit under "future legislation," and does not subject respondent to the provision of the Constitution applicable to railroads. Const., art. 10, sec. 8; Pasch. Dig., art. 4945.

11. The alleged watering of its stock and excessive issue of bonds by the respondent are matters between it and its creditors and stock and bond holders, not injurious to the public, and in which it has no interest,

and are not grounds for forfeiture. The State v. Tel. Co., 41 N. W. Rep., 1020.

12. Respondent's connection with the International Traffic Association, if true, and if illegal, would only establish a violation of section 5, article 10, of the Constitution and would constitute no ground of forfeiture.

13. Where the misuse shown is not gross, resulting in certain incapacity for further discharge of corporate duty, but is partial only, involving only the manner of exercising some power or privilege of the corporation not essential to its existence, if forfeiture can be adjudged at all it must be limited and restricted in its application to such abused or misused power or privilege.

14. The court erred in holding, as a matter of law, that forfeiture of corporate existence was a legal and proper remedy for any or all of the matters complained of in the information and found to be true by the court. Com. v. Railway, 12 Gray, 188; Loan Assn. v. Topeka, 20 Wall., 655; 2 Mora. on Corp., 1114, 1115.

15. The proof shows that the Missouri, Kansas & Texas Company has operated respondent's road since November 28, 1881; that receivers are now and since last November have been operating that company. People v. O'Brien, 111 N. Y., 1.

*J. S. Hogg,* Attorney-General, for the State. — 1. A sale by a railroad company of its property, rights, and franchises is such an exercise of corporate powers as to forfeit its charter, unless authority to make it is expressly given by law; and the question of policy is no answer to the State's demand. Const., art. 4, sec. 22; Id., art. 10, secs. 5, 6; Rev. Stats., art. 2805; Acts 1879, p. 43; Acts 1885, p. 65; The State v. Railway, 24 Texas, 80; Railway v. Morris, 67 Texas, 692; Railway v. Rushing, 69 Texas, 313; State v. Railway, 29 Am. and Eng. Ry. Cases, 440; Conro v. Iron Co., 12 Barb., 63; Mora. Corp., 1115; 3 Wood Ry. Law, p. 1715.

2. If the sale complained of was ever authorized by the charters of the two railway companies, the right to make it was waived and surrendered by their acceptance of the provisions of the Constitution of 1876. Const., art. 10, sec. 8.

3. When the State confers powers on a corporation it has the right to withdraw them at any time before they are accepted and acted on by the grantee; therefore, as respondent did not make its sale until the Constitution was adopted prohibiting the like, it had no authority to do so. Cool. Const. Lim., 5 ed., p. 440; Railway v. Berry, 113 U. S., 465; Railway v. Rushing, 69 Texas, 313.

4. The power to consolidate does not embrace the authority to sell, nor does the denial of the right to sell to a competing or parallel line express or imply the right to sell to any other kind of railway. Com. v.

Smith, 10 Allen, 448; Taylor on Corps., secs. 131, 132, 304, 305; Railway v. Rushing, 69 Texas, 306; Railway v. Railway, 130 U. S., 1.

Authority to consolidate does not give right to lease.   Mills v. Railway, 41 N. J. Eq., 1; 48 N. J. L., 530; State v. Vanderbilt, 37 Ohio St., 638; Mackintosh v. Railway, 34 Fed. Rep., 614; Taylor on Corps., sec. 415.

5.    It is the duty of a railroad corporation to start and safely run its cars for the transportation of passengers and property at regular times over its whole line, and to furnish sufficient accommodations for them. When from misuse, abuse, or nonuser of its franchises or property it is rendered unable, or fails, neglects, or refuses to perform such duties, it forfeits its charter, and the State has the right to a decree therefor.   Railway v. Morris, 67 Texas, 700; State v. Railway, 24 Texas, 81; 3 Wood on Rys., sec. 499; Taylor on Corps., 459; 23 Wend., 193; Railway v. Hall, 91 U. S., 343.

6.    The State may waive a forfeiture by express legislation to that effect, but the intent of waiver must be clearly expressed in the act.   Const., art. 4, sec. 22; Id., art. 10, secs. 5, 6; Rev. Stats., art. 2805; Acts 1879, p. 43; Acts 1885, p. 65; Taylor on Corps., sec. 460; 41 N. J. L., 496; Redf. on Rys., p. 726, sec. 12; Turnpike Co. v. State, 19 Md., 239; State v. Morris, 73 Texas, 435.

7.    When the State seeks a forfeiture of a charter no parties are necessary to the proceeding except the corporation created by it.

8.    In a case where a railway company has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights, or has violated sections 5 or 6, article 10, of the Constitution, a District Court can legally appoint a receiver to take charge of the corporate property and administer it.   Rev. Stats., art. 606; Acts 1885, p. 66, sec. 4; Acts 1887, p. 120, sec. 3; Com. v. Bank, 32 Am. Dec., 290; Relfe v. Rundle, 103 U. S., 222; 18 Md., 194; Acts 1887, p. 120; Acts 1889, p. 56, sec. 6; Vanderbilt v. Little, 35 Am. and Eng. Ry. Cases, 18; Acts 1889, p. 19.

STAYTON, CHIEF JUSTICE.—This is a quo warranto proceeding by the State upon the relation of the Attorney-General, seeking a forfeiture of the charter rights and franchises of the respondent upon the following alleged grounds:

1.    Permitting its road bed, rolling stock, and general equipments to so get out of repair as to retard travel and commerce and to render the transportation of passengers over its road hazardous, dangerous, and extremely uncomfortable, thereby rendering itself unable to perform its duties to the public or to carry out the objects and purposes of its creation.

2.    Failure to keep a public office in the State and on the line of its road, and the removal of the same beyond the limits of the State.

3. Failure of its stockholders and directors to hold annual meetings on the line of its road for more than five years.

4. The sale of all of its corporate franchises, rights, and privileges, together with all its stock, road bed, buildings, depots, tools, bonds, grants, and other property, to the Missouri, Kansas & Texas Railway Company, a railroad corporation chartered under the laws of Kansas and controlling and operating a competing and parallel line of railway.

5. That the president, managers, superintendent, and other officers and employes of said parallel and competing line of railway are in control of, manage, and operate respondent's railway and corporate affairs exclusively at and from the State of Missouri, in violation of the Constitution and laws of this State; and that under said foreign and unlawful management its franchises have been so abused as to bankrupt and render insolvent respondent's railway.

6. That its bonds and stocks have been increased far beyond the value of its entire corporate property and franchises, and not for actual money paid but to increase the burdens of said railway and to form an excuse for heavier and more unreasonable charges on freight and passenger traffic.

7. That it has entered into a contract and conspiracy with other railway companies for the purpose of stifling and preventing competition in passenger and freight rates.

That instead of exercising its own franchises, and regulating and fixing its own tolls of passenger and freight traffic and time tables and regulations of its trains over its own line, it has by the contract, sale, and combination left all such matters to the control of the other railways and to an organization known as the International Traffic Association.

8. That by said sale of all its property and franchises respondent has committed self-destruction, violated its public duty to maintain and operate its road, suspended the exercise of its franchises as a railroad company, and wholly rendered itself unable to resume its obligations or to perform its duties to the public.

The respondent filed a general demurer to the State's bill, and specially excepted to each of the averments therein, which on preliminary hearing was overruled upon the ground that while some of these allegations considered separately might not justify a forfeiture, yet there were good grounds for a forfeiture stated, especially those concerning the run down and bad condition of the road and the sale of franchises; and in determining whether or not the judgment sought should be rendered, all the charges in the bill should upon the question of intent be inquired into.

The respondent also filed a general denial, but admitted the sale of its properties and franchises to the Missouri, Kansas & Texas Railway Company, reserving its right to remain a corporation, and claims that said sale was lawful; it also admits that it is subject to the Constitution and

general laws of the State, and that the Missouri, Kansas & Texas Railway Company is chartered and organized under the law of the States of Kansas and Missouri.

The cause was tried without a jury.

Respondent is a railway corporation, chartered, organized, and acting under and by virtue of the special laws passed by the Legislature of this State on the 22nd day of March, A. D. 1871, and amendments thereof passed respectively May 17, A. D. 1873, and March 6, A. D. 1875, authorizing it to construct, own, and maintain a line of railway, with either a single or double track, from the city of Jefferson in Marion County, to the town of Greenville in Hunt County, via Mt. Pleasant in Titus County, and Sulphur Springs in Hopkins County; thence in a westwardly or northwestwardly direction to the western limits of the State. The duration of the charter is fixed at sixty years from the date of the completion of the railway, and it further provides that the company shall be entitled to sixteen sections of 640 acres each of land for each mile of road completed.

The Act of March 22, 1871, contained the following provision: "Said company is authorized and the right is hereby granted them to cross or connect with any other railway, to join stocks or consolidate with any other railway company running in the same general direction;" and the Act of May 17, 1873, the following: "That the State reserves the right to regulate by general law the rates * * * as well as the management and control of said railroad, its officers, and employes," etc. "That said company shall not have the right to rent, sell, lease, or consolidate with any parallel or competing railroad in this State."

Appellant specially pleaded the acts from which the foregoing quotations are made, and no other.

The right to grants of land was given by the act last named, which authorized the construction of a single or double track of the gauge of four feet eight and one-half inches, but by Act of March 6, 1875, the company was authorized to adopt any gauge not less than three feet.

The only law of this State having special relation to the Missouri, Kansas & Texas Railway Company brought to the attention of the court below or this court is the Act of August 2, 1870, which contains the following provisions:

"The Missouri, Kansas & Texas Railway Company, a corporation authorized by Congress, * * * shall have the right to extend its railroad, with its present gauge, together with its telegraph lines, from some convenient point on Red River between Preston and Doaksville, where its road shall cross from the Indian Territory, into and through the State of Texas, in the general direction of Waco and Austin to the Rio Grande, with a view of extending the same to Camargo and the City of Mexico;

and also the right to construct a branch road from a point at or near its crossing of Red River westwardly," etc.

"That the said company, in constructing, extending, and operating its railroad and branches, shall have and exercise and are hereby vested with all the rights, powers, privileges, and immunities granted by its acts of incorporation and amendments thereto so far as the same may be applicable to this State and not inconsistent with the Constitution thereof," etc.

"That the said company shall have the right to purchase, sell, lease, join stocks, unite, or consolidate with any connecting railroad company," etc.

The court below made findings of fact, which are sustained by the evidence, and we do not understand appellant seriously to controvert their general correctness.

These, so far as necessary to a correct understanding of the case, will be here given:

"2.    That as such railway company respondent constructed and built a narrow gauge railroad from said city of Jefferson via Greenville in Hunt County to McKinney in Collin County, Texas, a distance of one hundred and fifty-five miles, and received from the State for so doing land certificates at the rate of sixteen sections (640 acres each) per mile.

"3.    That on the 28th day of November, 1881, respondent sold and delivered all its corporate franchises, rights, and privileges, together with all its stock, road bed, buildings, depots, rolling stock, engines, tools, etc., to the Missouri, Kansas & Texas Railway Company, a corporation chartered under the laws of Kansas and Missouri; that by said sale and the deed of conveyance respondent reserved the right to be and remain a corporation until such time as might be agreed upon for its dissolution, and provided that its power to carry out its contracts should remain unimpaired; and it obligated the said Missouri, Kansas & Texas Railway Company to perform and fulfill all of respondent's charter obligations to the State and to the public; and the conveyance contains this recital:

"'The object and intent of this contract, conveyance, and agreement being to so merge the rights, powers, and privileges of the party of the first part into the party of the second part under its own charter, corporate name, and organization, that it shall, without impairing any existing right, exercise in addition thereto all powers, rights, privileges, and franchises, and own and control all properties that the party of the first part now exercises, owns, or by its charter or the laws it has a right to exercise, own, or control.'"

The last quotation is from the contract between the two corporations.

"5.    It is shown that a majority in interest of the stockholders of both respondent and the Missouri, Kansas & Texas Railway Company in proper form consented to, authorized, and approved the aforesaid sale.

"6.    In accordance with said Act of the Legislature of August 22, 1870,

the Missouri, Kansas & Texas Railway Company constructed its road across Red River into Texas in a southward direction, and in the general direction of Waco and Austin via Denison, Whitesboro, Fort Worth and to the city of Waco; thence in the general direction of the city of Austin southward to Taylor, in Williamson County, and a branch road from Whitesboro west to Henrietta, Texas.

"At the time of the aforesaid sale from respondent to it said Missouri, Kansas & Texas Railway Company was operating a railroad from Denison to Greenville, and extending thence in a southeasterly direction to Mineola, where it connects with the International & Great Northern Railroad and the Texas & Pacific Railroad; with the former it makes a continuous line to Galveston. From Denison the Missouri, Kansas & Texas runs north to Sedalia, Missouri, where it forms connections with other lines leading to St. Louis. The East Line & Red River Railroad at time of said sale connected with water transportation to New Orleans, and with the Texas Pacific Railroad, running with its connecting lines to St. Louis, at Jefferson. The Houston & Texas Central Railroad runs from Dallas north to Denison via McKinney, and was so running at the time of said sale and consolidation, and it extended south to Houston, crossing the Cotton Belt Railroad at Corsicana and the International & Great Northern Railroad at Hearne.

"7.    The Missouri, Kansas & Texas Railway, as constructed and operated from Denison via Whitesboro, Fort Worth, and Waco to Taylor, runs practically north and south, and the East Line & Red River Railway from Jefferson runs a little north of west to McKinney; the branch of the Missouri, Kansas & Texas from Denison to Mineola via Greenville runs in a southeast direction, but not parallel with the East Line & Red River road, and not in the same general direction. Greenville and Mineola are east of south from Denison, in the direction of the Sabine River, and not in the direction of the Rio Grande.

"8.    The East Line & Red River road crosses the Denison and Mineola branch of the Missouri, Kansas & Texas at Greenville, and did so when said sale was made, but it does not and never has reached or connected with the main line of said road from Denison to Taylor via Fort Worth and Waco—McKinney, the western terminus of the East Line & Red River road, being about twenty-five miles east of said main line; nor do the said main lines of the Missouri, Kansas & Texas Railway and the East Line & Red River run in the same general direction.

"9.    That since the time of said sale respondent has failed and neglected to keep and maintain a public office in this State and along the line of its road for the transaction of its business, and the said Missouri, Kansas & Texas Railway Company keeps its principal office in Sedalia, State of Missouri; that prior to said sale respondent kept such an office at Jefferson, Texas.

"10.   That since the time of said sale the stockholders and directors of said East Line & Red River Railway Company have not in good faith held annual or any other meetings at any place on the line of said road. That nominally the stockholders have held annual meetings and elected directors, but these meetings were not held for the purpose of transacting any business concerning the management of the East Line & Red River Railway by respondent, but for the purpose of technically complying with the law in the interest of the Missouri, Kansas & Texas Railway.

"11.   Since the time of said sale respondent has not operated or controlled any portion of its railroad from Jefferson to McKinney, and the same has been managed, controlled, and operated by the Missouri, Kansas & Texas Railroad and the Missouri Pacific Railway Company, and no officer of respondent, elected either in good or bad faith, resides upon the line of its road, and no such officer or employe, acting in good faith for it, has taken any interest in or supervision over the management of said road since said sale to the Missouri, Kansas & Texas Railway Company."

"13.   That since said sale, and while operating and controlling the East Line & Red River road, the Missouri, Kansas & Texas Railway Company became a member of the International Traffic Association, the purpose of which was to make uniform rates for railway traffic, and to prevent competition among and between its members.   This association was recently dissolved at New Orleans, where I presume its headquarters were. Respondent's road was affected by and included in the Missouri, Kansas & Texas Railway Company's membership of said association.

"14.   Of the last board of directors so nominally elected for respondent, as hereinbefore stated, one member is a director of the Missouri, Kansas & Texas Railway Company, another is an employe of said company, one is a local treasurer of, and two are attorneys for the Missouri Pacific Railway system, which includes the roads of the Missouri, Kansas & Texas in Texas, and most of the others are either officers, directors, or employes of other railroads.

"15.   There is evidence that prior to said sale to the Missouri, Kansas & Texas Railroad, and while respondent's road was being constructed, it issued stock and bonds that were not for money, labor, or property actually received and applied to the purposes for which it was organized; and the testimony indicates that the bonded indebtedness, secured by mortgage on respondent's road, has been greatly increased since then without any corresponding benefit to this road.

"15a.   Disregarding their connections with other railroads and lines of transportation, the East Line & Red River and the Missouri, Kansas & Texas railroads were not competing roads when said sale was made.   Considered with reference to such connections they were competing roads.

"16.   The respondent's road was constructed from Jefferson to Greenville, reaching the latter place in 1880, and after the aforesaid sale the

thirty-two miles of the road from Greenville to McKinney, which was under contract at the time of the sale, was completed, reaching McKinney in 1881 or early part of 1882. The entire line was constructed as a narrow gauge road, using ordinary narrow gauge rails."

The court then gives a statement somewhat in detail as to the manner of construction of that part of the road between Greenville and McKinney, and as to its condition, and upon this matter concludes as follows:

"This road passes through a very rich and productive country, having a large population tributary to it, and McKinney and Greenville are large and flourishing interior towns, and Farmersville, midway between them, is a town of about 2500 inhabitants; and because of the bad condition of this road, as above stated, the travel on it is very little and the public are put to great inconvenience, persons sometimes having to go from Greenville to McKinney by way of Dallas or Denison, more than double the distance, and witnesses under process having to walk from Farmersville to McKinney to attend court.

"Wherefore it is held that for the past two years the condition of this portion of respondent's road has been such as to very considerably and at times entirely prevent it from performing its duties to the public and from carrying out the objects and purposes of its creation."

No authority whatever is shown under which the Missouri, Kansas & Texas Railway Company can lawfully own or operate the line of railway from Denison to Mineola, which crosses respondent's line at Greenville.

The judgment of the court below is based on the propositions:

1. That the attempted sale of the railway was unlawful, and that since its date respondent has failed to exercise the franchise conferred upon it by its charter.

2. That the condition of its road has not been such as to enable it to discharge to the public the duties assumed.

That respondent undertook, on November 28, 1881, to convey to the Missouri, Kansas & Texas Railway Company all its property and corporate franchises of every character whatsoever necessary to the conduct of the business for which it was created, except the mere franchise to be a corporation, until such time as by *agreement of the parties* this might be taken away by dissolution, is not denied; but on the contrary, it is claimed that this was done in the lawful exererise of power conferred on the two corporations.

To authorize such a transaction it must appear that the one corporation had power to sell and the other to buy. Railway v. Rushing, 69 Texas, 306.

Had respondent the power to sell by reason of anything appearing in its charter, or by reason of any law in force in this State?

By the terms of its charter given by special Act of March 22, 1871,

respondent was empowered "to join stocks or consolidate with any other railway company running in *the same general direction.*"

It was authorized by its charter to construct, own, and operate a railway from the city of Jefferson to the town of Greenville, and thence westwardly or northwestwardly to the western limits of this State; in effect, a road across the northern part of the State whose general course would be westward.

In view of this fact, as the power given was to join stocks or consolidate with a railway company running in the same general direction, the only fair construction to be given to so much of the charter is that it was thereby intended to confer power to make such an association with another railway company having a road which might constitute a part of the line of railway respondent was empowered to construct, own, and operate.

That the company to whom the sale was made owned or could own a line of railway running in this same general direction can not be claimed; but if this were otherwise, it could not well be held that the power conferred on respondent was a power to sell.

The prohibition to "rent, sell, lease, or consolidate with any parallel or competing railroad in this State" does not confer a power to sell to another railway company owning a road not parallel or competing.

The power to rent from, sell or lease to, or consolidate with another railway company does not exist, in the absence of legislation permitting these things to be done, and it can not be implied from a prohibition extending to parallel or competing roads.

We further concur with the court below in the holding that railways, by reason of their relations with, control, or management of other lines than their own, may become, within the meaning of the law, competing lines, though the railways owned by them may not in fact connect.

Respondent had not power, under the terms of its charter or any other law in force in this State, to sell its road or any franchise conferred by its charter.

The Missouri, Kansas & Texas Railway Company was as clearly without power to buy the road owned by respondent as was it to sell.

It was given power "to purchase, sell, lease, join stocks, unite, or consolidate with any *connecting* railroad company;" but in determining what, within the meaning of the act, was to be deemed a "connecting railroad" we must look to the act through which alone it was empowered to own or operate a railway in this State.

It is not to be presumed that the Legislature ever contemplated that this corporation would assume, without legislative permission, the right to construct, own, or operate a railway within the limits of this State whenever it might seem to it advantageous to do so. The act doubtless was passed at the solicitation of the corporation, and for the purpose of

conferring on it the power, which otherwise it had not, to construct, own and operate a railway whose lines were fixed by the act, and with reference to which its power to "purchase, sell, lease, join stocks, unite, or consolidate with any connecting railroad company" must be construed.

That the Missouri, Kansas & Texas Railway Company had constructed or could construct a railway under the act from which it derives all its power in this State to construct, own, or operate a railway, which connected with respondent's road as it was at the time the sale was made, can not be claimed.

We are of opinion that within the meaning of the act—the source of all the power that corporation has in reference to matters now under consideration—a company whose road did not connect with that which that corporation, under the power conferred upon it, had constructed or purchased, was not a connecting railroad company.

That the Missouri, Kansas & Texas Railway Company may have operated a line of railway from Denison to Mineola which crossed respondent's road at Greenville can not affect the question, for that was not a line contemplated by the Act of August 2, 1870.

If it had been shown that the road from Denison to Mineola had been built or purchased by that company, the result would be the same; for the act does not look to connections made through roads not built under it, though they may have been built by that corporation, nor does it look to connections made through lines which may be purchased by that company by reason of the fact that they connect with the road the company was authorized to construct.    Any other conclusion would lead to a holding that by extending its connections that corporation could make, through such connections, every road in the State one connecting with that contemplated by the Legislature at the time the act was passed.

So stands the question if we look only to the charter of respondent and the law under which the other corporation has power to construct, own, and operate a railway in this State.    It seems, however, from the admissions in the answer of respondent that the power of the one corporation to buy and of the other to sell is to be tested by the laws in force in this State at the time of trial, which renders it unnecessary to consider whether the laws before referred to conferred such rights as might not be taken away by subsequent legislation at any time before the powers therein given were exercised and rights thus acquired.

The first two paragraphs of respondent's answer are as follows:

"1.    It denies specifically each and every allegation in said petition contained, except as hereinafter admitted or confessed and avoided.

"2.    It admits its incorporation by special law of the State Legislature of Texas, as mentioned in the State's bill, except that of March 22, 1873, and of the last named act defendant requires proof; it also admits that

it is subject to such special laws as have been enacted, and to the Constitution and general laws of the State now in force."

There is nothing in the answer which withdraws this, but it seeks to show, if the acts complained of are in violation of the Constitution and other laws, that under existing laws the acts charged against it do not authorize a forfeiture of its charter.

The State alleged that the company was subject to the provisions of the Constitution and general laws in force when the proceeding was instituted, and the admission in the answer must be deemed an admission, if this were necessary to give full application to the provisions of the Constitution, that the corporation had taken benefit of legislation subsequent to its adoption, and in accordance with its provisions thus became subject to all its provisions.

Such an admission rendered it unnecessary for the State to make proof as to the reception of such benefits.

Article 10, section 5, of the Constitution provides that "no railroad or other corporation, or the lessees, purchasers, or managers of any railroad corporation, shall consolidate the stock, property, or franchises of such corporation with, or lease or purchase the works or franchises of, or in any way control any railroad corporation owning or having under its control a parallel or competing line; nor shall any officer of such railroad corporation act as an officer of any other railroad owning or having the control of a parallel or competing line."

The court below found, on evidence that justified it, that respondent and the corporation to whom it sold were competing lines.

The Constitution forbade the sale.

Since the sale the road of respondent has been operated, controlled, and its franchises exercised by the officers of another corporation, in whose selection its stockholders had no voice.

It stripped itself of all property necessary to enable it to discharge its duty to the public, and to this its stockholders consented by the ratification of a contract which reserved to respondent no other right or franchise than "to be and remain a corporation until such time as may hereafter be *agreed upon* for its dissolution, (which) shall not be impaired or infringed upon by anything contained in this contract."

The terms of the contract are suggestive of the fact that both corporations, or rather their officers and stockholders, were conscious that the contract between them was in clear excess of their powers, and in violation of the laws of this State.

The Missouri, Kansas & Texas Railway Company is a corporation organized under the laws of another State, and respondent held its corporate existence and was organized under the laws of this State.

Article 10, section 6, of the Constitution provides that "no railroad company organized under the laws of this State shall consolidate, by pri-

vate or judicial sale, or otherwise, with any railroad company organized under the laws of any other State, or of the United States."

Section 8 of same article provides that "no railroad corporation in existence at the time of the adoption of this Constitution shall have the benefit of any future legislation, except on condition of complete acceptance of all the provisions of this Constitution applicable to railroads."

The contract in question having been made since the adoption of the Constitution now in force, under the admissions in the answer it must be held that it is in clear violation of section 6, before quoted.

In view of the facts found to be true, it must be held that respondent for nearly seven years before the information was filed had ceased to exercise its corporate franchises, had parted with its property necessary to that end as far as it could, and had not even in good faith kept up its corporate organization, its highest officer resident at or attending to the business at its principal office being really but a claim agent for the purchasing company.

In addition to this, as found by the court below, the road had been so far permitted to run down that it ceased to be able to carry out the objects and purposes for which the corporation was created.

Sufficient cause was shown to justify a forfeiture of respondent's charter, if we look only to common law grounds for such action. But it is contended that the legislation in this State shows that it is not intended such a penalty shall be imposed for such neglects of duty as are evidenced by the record before us.

Article 10, section 3, of the Constitution provides that railroad companies organized under the laws of this State shall therein maintain a public office, at which named business shall be transacted; that the directors shall hold within this State annually one meeting, and that reports shall be made of its acts and doings to the Governor or Comptroller, as may be prescribed by law, and that "the Legislature shall pass laws enforcing by suitable penalties the provisions of this section."

For failure in these respects the Legislature has prescribed penalties other than the dissolution of the corporation. Sayles' Civ. Stats., arts. 4115a, 4250.

It is unnecessary, however, to consider in this case whether the mere imposition of a penalty will amount to a waiver of the right of the State to demand a forfeiture of the charter of a corporation for long and persistent nonuser or misuse of its franchise; for the court below did not base its judgment on the failure of respondent to do any act for the doing of which the Legislature has imposed a lighter penalty.

The Constitution and statutes of this State contain the following provisions:

The Attorney-General, "whenever sufficient cause exists therefor, shall

seek a judicial forfeiture of  *  *  *  charters, unless otherwise expressly directed by law." Const., art. 4, sec. 22.

Unless expressly otherwise directed by law it is his duty to seek a judicial forfeiture of the charter of a private corporation which has by non-performance of its chartered conditions, or the violations of its charter, or by any act or omission, misuser, or nonuser, forfeited its charter or any rights thereunder.   Rev. Stats., art. 2805.

"In case any corporation does or omits any act which amounts to a surrender or a forfeiture of its rights and privileges as a corporation, or exercises any power not conferred by law," information in nature of quo warranto may be filed.   Acts 1879, p. 43.

The Act of 1879 contains the further direction that "in case any person or corporation against whom any such (information) is filed shall be adjudged guilty as charged in the information, the court shall give judgment of ouster against such person or corporation from the office or franchise, and may fine," etc.

The second section of the Act of March 28, 1885, provides that "if upon investigation the Attorney-General shall find that there is reason to believe or that it is probable that any railway or other corporation is now carrying on business within this State in violation of sections 5 and 6, article 10, of the Constitution, he shall at once institute proceedings by quo warranto or otherwise, in the court having jurisdiction of the cause or causes, against any corporation violating said sections and article of the Constitution, and to enforce the penalties therefor."   Sayles' Civ. Stats., art. 4247a.

The fourth section of the act is:   "If it shall be determined by the court or jury trying any cause instituted under the provisions of this act that the said sections and article of the Constitution are being violated, then the court shall enter such decree as will perpetually enjoin such violation, and to the end of carrying into effect such constitutional provisions may appoint a receiver to take charge of the affairs of the defendant corporation until such time as the said corporation shall be reorganized and in condition to be operated within said provisions of the Constitution."   Sayles' Civ. Stats., art. 4247a.

It is insisted that this statute is applicable to the case before us, and that the only relief which can be given under it is an injunction to restrain the illegal act and the appointment of a receiver.

To say the least, it is very doubtful if the statute last referred to has any application to the case before us, for it refers to corporations carrying on business in this State in violation of the sections of the Constitution referred to, and might properly reach the case of the Missouri, Kansas & Texas Railway Company, which under the findings is carrying on a business in this State in clear violation of the spirit if not the letter of the Constitution.

The courts of this State would have no power to declare a forfeiture of the charter of that corporation granted by the laws of the State where it was created, but would have power to withdraw the franchise here granted whenever the facts justified it, and by injunction or otherwise to prevent its carrying on business in this State in violation of its laws. They would also have power to place property controlled by it and situated in this State in the hands of a receiver and to adjust the rights of such persons as might be shown to have valid claims against it, or even to avoid a valid incorporation in this State by those interested in property acquired by it in any lawful manner.

If, however, the act had application to respondent, we see nothing in it which evidences an intention on the part of the State to waive the forfeiture of the charter of a corporation which has misused its franchise or has failed to carry out the purpose for which it was created.

That respondent's abuse of its franchise is evidenced by an act violative of the Constitution, and that its nonuser of its franchises may be attributable to that act in this proceeding, becomes important as an aggravating fact indicating the willfulness of the act; but still the fact remains that respondent used its powers for a forbidden purpose, which is a misuser of its franchise, and the further fact that it failed for a long time to exercise its corporate franchises to carry out the purposes for which they were given.

Such abuse and nonuse of the corporate franchise gives common law grounds for a forfeiture of respondent's charter, and there is nothing in the statute which indicates that the State intended to waive its right to a forfeiture, and the court below correctly so held.

No question was made in the trial court as to the necessity to join the purchasing railway company as a defendant, but had there been, we do not see that it was a necessary party.

The last assignment of error is that "the court erred in holding that it had the authority to appoint a receiver to take charge of the property and effects heretofore belonging to the respondent, but which, upon its dissolution by judgment of forfeiture, at once go to the stockholders of the concern, subject to the rights of creditors, especially those holding liens on the property, said stockholders or lienholders not being before the court, and not having been impleaded or cited in this cause; so much of the Act of July 9, 1879, as directs the rendering of such judgment being contrary to the Constitution of the United States and of this State, and therefore null and void."

Statutes in force in this State regulating the appointment of receivers in such cases provide that "upon dissolution of any corporation already created, * * * unless a receiver is appointed, * * * the president and directors or managers * * * shall be trustees of its property." Rev. Stats., art. 606.

Court "may appoint a receiver to take charge of the affairs of the defendant corporation until such time as the said corporation shall be reorganized and in condition to be operated." Acts 1885, p. 66, sec. 4.

"Receiver may be appointed in cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights" (Acts 1887, p. 120, sec. 3), and his powers and duties are therein fully defined.

There is nothing in this legislation violative of the rights of any person or corporation.

The property will go into the hands of such person as may be appointed receiver, subject to all just claims to it or upon it, and these may be adjusted in accordance with the well settled rules applicable thereto.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered December 17, 1889.