**Reversed and Remanded in part, Reversed and Rendered in part, and Memorandum Opinion filed October 9, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00110-CV

---

**KEN PAXTON, IN HIS OFFICIAL CAPACITY AS TEXAS ATTORNEY GENERAL, AND THE STATE OF TEXAS, Appellants**

**V.**

**FIEL HOUSTON, INC., Appellee**

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2024-43394**

---

## MEMORANDUM OPINION

FIEL Houston, Inc. (FIEL) is a domestic, non-profit entity that describes itself as a "membership organization that provides educational and social services to immigrants and others in the Houston area." Ken Paxton, Attorney General of the State of Texas, and the State of Texas (collectively, the State) filed an "application for temporary injunction and motion for leave to file [proposed] petition in the nature of quo warranto." In its motion, the State sought permission

to file a petition for a judicial forfeiture of FIEL's corporate charter on the grounds that by engaging in various political activities, FIEL had violated federal and state tax laws that exempt qualifying charitable organizations from certain taxes and, relatedly, had violated the terms of its charter. In addition, in its application, the State sought temporary injunctive relief to immediately halt FIEL's operations pending resolution of the petition on the merits. Following a hearing, the trial court signed an order denying all relief requested by the State. The State timely filed a notice of appeal.

On appeal, the State contends that the trial court erred in denying its motion for leave to file its petition to proceed on its quo warranto action and in denying its application for a temporary injunction. Since the State filed this appeal, the Texas Supreme Court issued its opinion in *Annunciation House*, which greatly affects the scope of this appeal and the validity of the trial court's rulings. *See Annunciation House, Inc. v. Paxton*, ___ S.W.3d ___, 2025 WL 1536224, at *3 (Tex. May 30, 2025). Because we conclude that the State may institute quo warranto proceedings based on allegations that a corporation has acted ultra vires, we reverse the trial court's order and render judgment that the State's motion for leave is granted. We remand all other issues for consideration in light of this opinion and the supreme court's opinion in *Annunciation House*.

## BACKGROUND LAW

"The purpose of a quo warranto proceeding is to question the right of a person or corporation, public or private, to exercise a public franchise or office." *In re Dallas Cnty.*, 697 S.W.3d 142, 152 (Tex. 2024) (quoting *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1991)); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 595 n.6 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A

2

writ of quo warranto is an extraordinary remedy used to determine disputed questions about the proper person entitled to hold a public office and exercise its functions, or to question the existence of a public corporation or district and its right to act.").  The writ of quo warranto is exclusive and can only be brought by the attorney general, a county attorney, or district attorney.  *In re Dallas Cnty.*, 697 S.W.3d at 152.

A product of English common law, dating back to at least the thirteenth century, the quo warranto doctrine allowed the King to question the authority of persons claiming a right to "any office, franchise, liberty, or privilege belonging to the crown" and, when necessary, to reclaim those royal privileges.  *Annunciation House*, 2025 WL 1536224, at *3 (quoting 1 W.S. Holdsworth, *A History of English Law* 2290-30).  As the law of corporations developed, "private corporations—which existed only through express legislative authorization—were also subject to the quo warranto actions."  *Id.* at *4.

Upon America's founding, the quo warranto doctrine was incorporated into this country's common law, with the state replacing the monarchy as the sovereign. *Id.* at *4.  No longer focused "on the abuse of a royal privilege but on a corporation's 'special contractual relationship with the incorporating state,'" quo warranto became a tool for rooting out and remedying corporate abuse.  *Id.* (quoting Herbert Hovenkamp, *The Classical Corporation in American Legal Thought*, 76 Geo. L.J. 1593, 1659 (1988)).  In the years that followed—despite a shift in corporate law, moving primary oversight responsibility from the state to the shareholders—courts continued to  recognize the state's ability "to test the right of a corporation to exist and to forfeit corporate charters and franchises" on grounds of misuse or abuse.  *Id.* at *5.

In Texas, the attorney general's power and duty to file quo warranto

3

proceedings were incorporated into the Texas Constitution. In relevant part, Section 22 of Article IV states:

> [The attorney general] shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law[.]

Tex. Const. art. IV, § 22; *see* Tex. Gov't Code § 402.023(a) (tracking language of article IV, section 22, stating that "[u]nless otherwise provided by law, the attorney general shall seek a judicial forfeiture of a private corporation's charter if sufficient cause exists"). The Texas Supreme Court recently recognized that this provision gives the attorney general broad constitutional authority to seek charter revocation in the courts through quo warranto actions and the discretion to determine whether there is sufficient cause to do so, except in those circumstances where the Legislature requires the attorney general to take quo warranto action or, conversely, expressly prohibits the attorney general from taking quo warranto action. *Annunciation House*, 2025 WL 1536224, at *12.

Chapter 66 of the Civil Practice and Remedies Code governs the procedural aspects of quo warranto proceedings and empowers the attorney general to exercise his quo warranto constitutional authority to challenge certain enumerated acts. Tex. Civ. Prac. & Rem. Code §§ 66.001-.003. Relevant here, a quo warranto proceeding may be instituted by the State when, among other things, "a corporation does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation" or "a corporation exercises a power not

4

granted by law." *Id.* § 66.001(4), (5). A quo warranto proceeding is instituted by the attorney general or the proper county or district attorney petitioning "for leave to file an information in the nature of quo warranto." *Id.* § 66.002(a). The trial court "shall grant leave to file the information, order the information to be filed, and order process to be issued" if there is "probable ground" for the proceeding. *Id.* § 66.002(d). Notably, however, "no statute, rule, or caselaw explicitly requires the State to verify its petition [for quo warranto] or support it with evidence." *Annunciation House*, 2025 WL 1536224, at *14 (quoting *State v. City of Double Horn*, No. 03-19-00304-CV, 2019 WL 5582237, at *4 (Tex. App.—Austin Oct. 30, 2019, pet. denied) (mem. op.)).

When deciding a motion for leave to file quo warranto, courts apply a sufficiency-of-the-pleadings standard. *Id.* at *15. That is, to determine whether the State has demonstrated that there is "probable ground" for the requested quo warranto action to proceed, "the trial court must accept as true the allegations in the State's petition" and determine whether the petition "state[s] a cause of action" for which quo warranto is authorized. *Id.* (quoting *City of Double Horn*, 2019 WL 5582237, at *4). Consequently, a motion for leave "authorizes a limited facial attack to weed out filings that, due to some legal defect, cannot survive even though the court assumes the truth of the allegations." *Id.*

Although deferential, there are multiple reasons why a court, after applying this standard, might conclude that the motion for leave fails to "state[] a cause of action" for which quo warranto is available. *Id.* (quoting *State ex rel. Manchac v. City of Orange*, 274 S.W.2d 886, 888 (Tex. App.—Beaumont 1955, no writ) ("If the petition sought to be filed state[s] a cause of action, the court [is] in error in refusing permission to file it.")). For example, the trial court may conclude that, even if the facts as alleged are proven, the "requested quo warranto filing alleges

5

no conduct that Texas law actually proscribes." *Id.* Similarly, the court may conclude that the motion, on its face, falls within an express legislative prohibition on the attorney general's quo warranto power. *Id.* If the court concludes for these or other reasons that the attorney general cannot establish that there is "probable ground for the proceeding," it may properly deny leave to file. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 66.002(d); *see State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (1891) (explaining that "the final inquiry must in all cases be made in and through the courts, as to whether . . . the corporation has exercised a power not given by its charter or the general laws of the state")).

## ANALYSIS

In its proposed petition for quo warranto, the State alleges that FIEL has made public statements (through social media posts, direct messaging to members, and attendance at rallies) encouraging people to vote against then-candidate Donald Trump; advocating against certain immigration legislation proposed during the 2017 Texas Legislative Session; opposing then-president Joe Biden's immigration policies; and criticizing an immigration bill passed by the Texas Legislature and signed into law by Governor Abbott in 2023. Based on this alleged conduct, the State contends that relief in the form of judicial forfeiture of FIEL's charter is authorized by quo warranto under Article IV, Section 22, of the Texas Constitution and Chapter 66 of the Civil Practice and Remedies Code. *See* Tex. Const. art. IV, § 22; Tex. Civ. Prac. & Rem. Code § 66.001(4), (5). According to the State, by engaging in these political activities FIEL "systemically violates laws that govern and confer benefits on charitable organizations," including the Texas Tax Code, and in doing so, has "engag[ed] in conduct that its charter prohibits." We will consider in turn each of these proffered "probable

6

ground[s]."

*Violation of State Law*

Assuming, as we must at this stage, that FIEL has engaged in the political activities that are the basis of the State's complaint, we first consider whether a "probable ground" exists to institute a quo warranto proceeding for judicial forfeiture on the basis that these activities violate state law, specifically the Texas Tax Code. *See* Tex. Bus. Orgs. Code § 2.003 (providing that domestic entities "may not [] engage in business or activity that [] is expressly unlawful or prohibited by a law of this state").

In its proposed petition, and now on appeal, the State contends that FIEL has violated Section 11.18 of the Tax Code, which it contends "substantially incorporates [the] federal requirements" of Section 501(c)(3). Under the Internal Revenue Code, corporations organized under Section 501(c)(3) enjoy certain tax benefits, in exchange for conferring a public benefit. *See* 26 U.S.C. § 501(c)(3); *see Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983). Specifically, to receive these tax benefits, the organization must operate "exclusively for" at least one of several enumerated purposes, including for charitable purposes, *see* 26 U.S.C. § 501(c)(3); comply with Internal Revenue Service procedures for obtaining recognition of the exemption, *see* 26 C.F.R. § 601.201 ("Rulings and determinations letters"); and, relevant here, not "participate in, or intervene in (including the publishing or distributing of statements), any political campaign" or "attempt[] to influence legislation by propaganda or otherwise," *id*. § 1.501(c)(3)-1.

Under Section 11.18 of the Tax Code, qualified "charitable organizations" are exempt from certain state property taxes. Tex. Tax Code § 11.18. Specifically,

7

to qualify for the state exemption, the charitable organization must be "organized exclusively to perform religious, charitable, scientific, literary, or educational purposes" and "engage exclusively in performing one or more . . . charitable functions," as expressly enumerated by statute. *Id.* § 11.18(d). Section 11.18 does not, however, expressly prohibit political activities, nor does it reference Section 501(c)(3) or IRS regulatory prohibitions on political activities. Nevertheless, the State argues that by engaging in political activity, FIEL is not "engage[d] exclusively" in a charitable function and, therefore, does not fall within the scope of Section 11.18's tax exemption. *See id.*

Assuming that an organization that engages in political activities is not "engage[d] exclusively in performing . . . charitable functions," as that phrase is used in Section 11.18, we disagree that such activity necessarily constitutes a cause of action that will support a quo warranto proceeding. Under Section 11.18, an organization that does not "engage exclusively" in a charitable function will fail to qualify for, or potentially lose, its tax-exempt status as a "charitable organization" under Section 11.18. But, of course, nothing in Texas law requires an organization to claim tax-exempt status under Section 11.18, even if it qualifies, and there is nothing inherently unlawful about failing to qualify for a tax exemption under Section 11.18. In short, failing to fall within the scope of Section 11.18's tax exemption does not, in itself, constitute a violation of state law. To the extent the State seeks to file a quo warranto action based solely on a "violation" of Section 11.18, we cannot conclude that the trial court erred in denying the attorney general's motion for leave on this ground.[1] *See Annunciation House*, 2025 WL

---

[1] The State also suggests that FIEL violated Section 2.113 of the Business Organizations Code. Section 2.113(a), titled "Limitation on Powers," states: "This [subchapter B of Chapter 2 of the Business Organizations Code] does not authorize a domestic entity . . . to exercise a power in a manner inconsistent with a limitation on the purposes or powers of the entity contained in its governing documents, this code, or other law of this state." Tex. Bus. Org. Code

1536224, at *15 ("If a requested quo warranto filing alleges no conduct that Texas law actually proscribes, for example, the trial court may deny leave to file.").

## *Ultra Vires Action*

Second, we consider the State's argument that a "probable ground" exists to institute a quo warranto proceeding because it is seeking to enforce promises made by FIEL in its charter—also referred to as a certificate of formation—to comply with Section 501(c)(3) of the Internal Revenue Code.[2]

FIEL's certificate of formation states:

Article II- Purpose

The Corporation is organized for charitable, religious, scientific, literary, or educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 (the "Code"), and the Texas Tax Code, Section 11.18. . . . .

---

2.113. We do not construe Section 2.113 as a direct limitation on entities such as FIEL but, instead, as a limitation on how subchapter B should be construed. In other words, subchapter B of Chapter 2 cannot be construed as allowing an entity to exercise a power that its governing documents, the Business Organizations Code, or other state law would prohibit.

[2] A nonprofit corporation is formed by the proposed entity's organizers filing a certificate of formation with the Texas Secretary of State. Tex. Bus. Orgs. Code § 22.101 (providing that to form nonprofit corporation, members of organization "shall authorize the organizers to execute the certificate of formation"); *see also id.* § 3.001(a) (stating that "to form a filing entity, a certificate of formation . . . must be filed in accordance with Chapter 4"). The certificate of formation must contain certain information about the to-be formed corporation, including "the purpose or purposes for which the filing entity is formed, which may be stated to be or include any lawful purpose for that type of entity." *Id.* § 3.005(a)(3). In addition, the certificate of formation may contain "other provisions not inconsistent with law relating to the organization, ownership, governance, business, or affairs of the filing entity," *id.* § 3.005(b), which for a domestic entity may include limitations on the entity's purposes, *id.* § 2.005.

9

Article III- Restrictions and Limitations

Notwithstanding the foregoing or anything to the contrary herein, the Corporation may not:

. . .

E.     Conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and its regulations[.]

. . .

H.     Engage in more than an insubstantial degree in carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not directly or indirectly participate in, or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office, except as allowed by [the] Internal Revenue Code and its regulations.

Thus, by its own terms, FIEL's certificate of formation prohibits it from engaging in certain political activities and incorporates by reference the standard for political activities that are prohibited by the IRS for an organization seeking to achieve or maintain tax-exempt status under Section 501(c)(3).  In other words, FIEL's own certificate of formation, independent of any other law, effectively prohibits it from "participat[ing] in, or interven[ing] in (including the publishing or distributing of statements), any political campaign" and from "carrying on propaganda," or "otherwise attempting to influence legislation."  *See* 26 C.F.R. § 1.501(c)(3)-1.

In its petition, the State alleges that FIEL has engaged in numerous political activities that it claims fall within the scope of prohibited political campaigning under Section 501(c)(3) and, in turn, violate its certificate of formation.  The State's claim, in effect, is that FIEL has exceeded the scope of or violated

10

limitations set out in FIEL's certificate of formation and, as a result, has engaged in ultra vires conduct.

Under the doctrine of ultra vires, a corporation is prohibited from engaging in acts that are beyond the scope of its purposes or powers. *See Campbell v. Walker*, No. 14-96-01425-CV, 2000 WL 19143, at *11 (Tex. App.—Houston [14th Dist.] Jan. 13, 2000, no pet.) (mem. op.) ("An ultra vires act is an act that is beyond the scope of the powers of the corporation as defined by its charter or the law of the state of incorporation."). Historically, ultra vires actions could be brought to enforce legal obligations unique to a particular corporation or to corporations as a class based on the theory that a corporation was a creature of the incorporating state. Hovenkamp, 76 Geo. L.J. at 1659; *see Wilson v. United States*, 221 U.S. 361, 383 (1911) ("[T]he corporation is a creature of the state[, and] [i]ts rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation."). Therefore, although these ultra vires suits could be brought by shareholders or others in private proceedings, they could also be brought by the state in quo warranto proceedings. *Wilson*, 221 U.S. at 383; *see Staacke v. Routledge*, 241 S.W. 994, 999 (Tex. 1922) ("The general rule is that the question of whether or not a corporation has acted in excess of its lawful powers can only be raised by one interested in the corporation, or in a direct proceeding brought by the state, either to forfeit the charter or to subject it to punishment for the unlawful act."); *East Line & Red R. Co. v. State*, 12 S.W. 690, 696 (Tex. 1889) ("Unless expressly otherwise directed by law, it is [the attorney general's] duty to seek a judicial forfeiture of the charter of a private corporation which has . . . [committed] violations of its charter[.]").

In Texas, the ultra vires doctrine is codified in Section 20.002 of the Texas Business Organizations Code, which states that a corporation acts ultra vires by,

11

among other things, engaging in an "act . . . [that] is beyond the scope of the expressed purpose or purposes of the corporation." Tex. Bus. Orgs. Code.§ 20.002(c). Section 20.002 places strict limitations on who may bring suit for ultra vires conduct and the relief that may be obtained. *Id.* The Code specifically provides, however, that the attorney general may bring suit to terminate a corporation for ultra vires acts. In relevant part, Section 20.002 states:

> (c) The fact that an act or transfer is beyond the scope of the expressed purpose or purposes of the corporation or is inconsistent with an expressed limitation on the authority of an officer or director may be asserted in a proceeding:
>
> . . .
>
> (3) by the attorney general to:
>
> (A) terminate the corporation[.]

*Id.* § 22.002(c)(3). Thus, the Legislature has expressly authorized the attorney general to exercise his constitutional authority to file a quo warranto action when a corporation engages in ultra vires conduct by acting beyond the "scope of [its] expressed purpose or purposes" or, in the case of acts by an officer or director, "inconsistent with an expressed limitation" on their authority. *See id.*

The parties devote a considerable amount of their appellate briefing to the issue of whether the alleged actions taken by FIEL, in fact, run afoul of Section 501(c)(3)'s limitations on political activities and whether the State's proposed action comports with the First Amendment's free speech protections. However, after the trial court denied the State's motion for leave in this case, the Texas Supreme Court issued its decision *Annunciation House*, 2025 WL 1536224, at *26. In that case, the supreme court reversed a trial court's decision to deny the attorney general leave to file a quo warranto action where the attorney general had alleged

12

that the corporate defendant engaged in conduct that, if proven, would amount to criminal conduct. *Id.* In doing so, the supreme court clarified that the standard for granting leave to file a quo warranto action is narrow and deferential to filing by the attorney general and that a trial court's decision to grant leave has no preclusive effect on any subsequently filed pretrial dispositive motion. *Id.* at *15. As the court explained, "because the choice to allow a quo warranto filing requires such deference and pretermits the kind of factual and legal scrutiny that will come later, granting leave to file such an action has no preclusive effect on a court's consideration, for example, of a Rule 91a motion." *Id.* Accordingly, the supreme court in *Annunciation House* refused to resolve certain legal issues raised by the parties—including arguments about the evidence, defenses, and whether Fourth Amendment rights were implicated—because they were "beyond the narrow question of the attorney general's authority to file a quo warranto [claim]." *Id.* at *18.

Applying the scope and standard of review set forth in *Annunciation House* to this case, the sole issue before us is whether the State's allegations, taken as true, "state a cause of action" allowing quo warranto to proceed against a corporation based on ultra vires conduct. *See id.* We hold that the State's allegations that FIEL has failed to comply with the purpose and limitations set forth in its certificate of formation are sufficient to meet this standard and, thereby, to demonstrate that "there is probable ground for the proceeding." *See* Tex. Civ. Prac. & Rem. Code § 66.002(d). The trial court erred to the extent it concluded otherwise.

Like the supreme court in *Annunciation House*, we do not decide in this appeal whether FIEL has in fact engaged in the specific acts that the State claims that it has, or even whether those acts if proven would necessarily be prohibited

13

under Section 501(c)(3) and, by extension, the terms of FIEL's certificate of formation. Instead, these fact questions will be resolved in the quo warranto proceeding in the trial court. Similarly, we do not rule out the possibility that there are valid legal defenses that may be raised, and we recognize that all the various procedural devices for obtaining pretrial disposition under the Texas Rules of Civil Procedure are available to FIEL.

### *Temporary Injunctive Relief*

Finally, we consider the State's assertion that the trial court abused its discretion in denying its request for temporary injunctive relief. "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Id.* A trial court has broad discretion in deciding whether to grant or deny a temporary injunction, and we will reverse the ruling only if the trial court abused its discretion. *Id.*

In its application for temporary injunction, the State requested that the trial court enter an order "immediately halting FIEL's operations pending resolution of the petition on the merits." At the combined hearing on the State's motion for leave and application for temporary injunctive relief, the vast majority of the parties' arguments and the trial court's questioning concerned the legal issue of whether the attorney general has any legal authority to seek quo warranto in this case. No witnesses were presented, and the only evidence considered by the trial court consisted of documents attached to the State's proposed but unfiled quo warranto petition. Specifically, these documents were attached to an affidavit from an investigator in the attorney general's office and primarily consisted of copies of

14

social media posts and other images that, in the State's view, prove that FIEL engaged in the alleged activities. On appeal, the State asserts, based on this evidence, that it conclusively established that it has a probable right to the relief sought in its quo warranto action against FIEL, such that the trial court abused its discretion in denying injunctive relief. We do not reach this issue.

In its intervening decision in *Annunciation House*, the supreme court refused to review the trial court's ruling on the attorney general's request for temporary injunctive relief because, in denying relief, the trial court had "relied on legal error concerning the nature of quo warranto." *Annunciation House*, 2025 WL 1536224, at *26. Consequently, the supreme court vacated the trial court's order and explained that "should the attorney general renew that request [for temporary injunctive relief], the trial court must assess it in light of our holdings." *Id.* Here, as in *Annunciation House*, the trial court's ruling on the State's application for temporary relief was based on its incorrect legal conclusion that the State's proposed petition for quo warranto did not present a cause of action on which quo warranto could proceed. Like the court in *Annunciation House*, and for the same reason, we decline to review the trial court's denial of the State's application for temporary relief in this case. Accordingly, we reverse the trial court's decision on the State's application but remand the case for further proceedings, including a hearing on the application, consistent with this opinion and the supreme court's opinion in *Annunciation House*.

## CONCLUSION

We reverse the trial court's order denying the State's "application for temporary injunction and motion for leave to file [proposed] petition in the nature of quo warranto." We render judgment that the motion for leave to file is granted,

15

but we remand for consideration of all issues raised by FIEL and the State beyond whether the State may proceed on its petition in the nature of quo warranto.


                                        /s/ Scott K. Field
                                        Scott K. Field
                                        Justice


Panel consists of Chief Justice Brister and Justices Field and Farris.